UNITED STATES v. HAAS BROS. ET AL. (No. 3236)[1]

United States Court of Customs and Patent Appeals, April 10, 1930

*Charles D. Lawrence*, Assistant Attorney General (*Peter A. Abelés*, special attorney, of counsel), for the United States.
*Allan R. Brown* for appellees.
*Irving I. Hartman, amicus curiæ.*

[Oral argument February 12, 1930, by Mr. Lawrence and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

The involved merchandise was made out of straw pulp. It is single ply, nine one-thousandths of an inch in thickness, 30 to 60 inches in width, and imported in rolls for use in the manufacture of corrugated boxes or containers.

It was assessed for duty by the collector at 30 per centum ad valorem "as wrapping paper, or as paper not specially provided for," under paragraph 1309 of the Tariff Act of 1922, which reads as follows:

PAR. 1309. Jacquard designs on ruled paper, or cut on Jacquard cards, and parts of such designs, 35 per centum ad valorem; hanging paper, not printed, lithographed, dyed, or colored, 10 per centum ad valorem; printed, lithographed, dyed, or colored, 1½ cents per pound and 20 per centum ad valorem; wrapping paper not specially provided for, 30 per centum ad valorem; blotting paper, 30 per centum ad valorem; filtering paper, 5 cents per pound and 15 per centum ad valorem; paper not specially provided for, 30 per centum ad valorem.

---

[1] T. D. 43972.

The importers claimed in their protests that the merchandise was dutiable as paper board or pulpboard at 10 per centum ad valorem under paragraph 1302, the pertinent part of which reads as follows:

PAR. 1302. Paper board, wallboard, and pulpboard, including cardboard, and leather board of compress leather, not laminated, glazed, coated, lined, embossed, printed, decorated, or ornamented in any manner, nor cut into shapes for boxes or other articles and not specially provided for, 10 per centum ad valorem; pulpboard in rolls for use in the manufacture of wallboard, 5 per centum ad valorem: *Provided,* That for the purposes of this Act any of the foregoing less than nine one-thousandths of an inch in thickness shall be deemed to be paper; sheathing paper, roofing paper, deadening felt, sheathing felt, roofing felt, or felt roofing, whether or not saturated or coated, 10 per centum ad valorem.  *  *  *

According to the importers' witness, Haas, the imported material is manufactured as follows:

The straw as it arrives from the fields is in bales, and it is put into a machine which chops it up into very fine pieces, and then the pulp or the pieces are put into what is known as a beater or digester, and the pieces are treated with a chemical to form a mass or pulp, which pulp is then conveyed to the machine by power, possibly, or through gravity, and the pulp is distributed on a wire called a Fourdrinier wire, and then conveyed to the cylinders to form into a paper, and is died, and when it goes out at the other end it is a 9-point strawboard or a board.

After importation it is corrugated and used in the manufacture of corrugated boxes or containers. It may have some incidental or fugitive uses, but it is chiefly, if not substantially wholly, used for the purposes mentioned.

According to the evidence it is known as strawboard and as straw paper. The witnesses for importers testified that it was uniformly, generally, and definitely known in the trade of the United States as strawboard. The witnesses for the Government testified that it was generally known in the trade as straw paper, but was sometimes called strawboard.

The question to be determined is whether the Congress intended to provide for merchandise of this character under the provisions for paper board and pulpboard, including cardboard, not laminated, etc., at 10 per centum ad valorem under paragraph 1302, or as wrapping paper or paper not specially provided for, at 30 per centum ad valorem under paragraph 1309.

There is no evidence that the imported material is used as wrapping paper, and from our examination of it we are not inclined to the opinion that it could be commercially so used.

The court below in an exhaustive opinion by Fischer, Chief Justice, held the merchandise dutiable at 10 per centum ad valorem under paragraph 1302.

Some of the witnesses for the Government testified that, in their opinion, the distinction between strawboard and straw paper is that strawboard is made of multiple layers or plies of straw paper, while

straw paper is composed of one ply only. There is no evidence, however, that the trade has *definitely, uniformly, and generally* adopted this distinction as a basis for commercial transactions.

There is nothing in the statute to indicate that the Congress was familiar with the definitions given by the Government's witnesses. The Congress provided—

That for the purposes of this act any of the foregoing less than nine one-thousandths of an inch in thickness shall be deemed to be paper.

In the Summary of Tariff Information, 1920, prepared for the use of the Committee on Ways and Means of the House of Representatives, the Tariff Commission called attention to the provisions of paragraph 320 of the Tariff Act of 1913 and, with reference to strawboard, said:

\* \* \* *Strawboard* classified under paragraph 328 as pressboard or press paper, found to be used almost exclusively as common paper-box board, was held dutiable under this paragraph. (Abstract 38384, of 1915; see also Abstract 40383, of 1916.) So was merchandise invoiced as *pulpboard in sheets*, chiefly used for making ice-cream boxes and as an outside covering for various kinds of paper boxes. (Abstract 42533, of 1918.) \* \* \* *Pulpboard in rolls* classified as wrapping paper under paragraph 328 was held to come within this paragraph as pulpboard in rolls. (Abstract 43183, of 1919.) *Rolls of pulpboard used in the manufacture of so-called beaver board* were held properly dutiable under this paragraph as pulpboard in rolls not laminated, rather than exempt from duty under paragraph 649 as wood pulp. (G. A. 8280, T. D. 38093, of 1919.)

The witness, John R. Hecht, an examiner at the port of New York for about 25 years, said that merchandise of the character of that involved had been classified under paragraph 320 of the Tariff Act of 1913, following a decision in 1919 or 1920 by the court below holding such merchandise to be dutiable thereunder; and that it had been classified under paragraph 1302 of the Tariff Act of 1922, as pulpboard or paper board.

In the Summary of Tariff Information, 1921, prepared for the use of the Committee on Finance of the Senate relative to H. R. 7456, the Tariff Commission made the following report with reference to paragraph 1302:

*Important changes in classification.*—All varieties of paper board which have been advanced no further than the original manufacture on the paper machine have been grouped together in this paragraph. The aim has been to throw together all kinds of paper board which were separately named in the act of 1913, such as cardboard and cylinder-machine bristol board in paragraph 328, leather board in paragraph 530 and box board and pulpboard in paragraph 320. It appears to be desirable for the purpose of avoiding confusion and inconsistencies to place all paper board which has not undergone special processes of manufacture on the same tariff basis. *Some manufacturers define paper board as paper nine one-thousandths of an inch or more in thickness. As this seems to be the more generally accepted dividing line between paper and paper board, it is used in the present classification.* [Italics ours.]

In Abstract 43183, cited in the Summary of Tariff Information, 1920, the Customs Court held that pulpboard imported in rolls was not dutiable as wrapping paper under paragraph 328 of the Tariff Act of 1913, but was dutiable under paragraph 320. This case was decided in June, 1919.

Counsel for the Government contend that the merchandise before the court below in the cases cited in the Summary of Tariff Information, 1920, was not of the same character as that involved in the case at bar. This argument might be of importance were it not for the fact that the examiner at the port of New York, whose advisory classification had been held to be erroneous, testified positively that merchandise of the character of that here involved was before the court below in 1919 or 1920, and that it was held to be dutiable as pulpboard under paragraph 320 of the Tariff Act of 1913. We quote from his testimony:

The WITNESS. I returned this as paper in 1919; it was protested to this board and decided to be board instead of paper; so up to the time, I might say during the war, very little came in; shortly after the war it came in, and I returned it as paper, but I was reversed by the board.

Justice FISCHER. Continuously after that you returned it as paper board or pulpboard?

The WITNESS. Yes.

Obviously, then, the involved merchandise is of the same character as the pulpboard held by the court below to be dutiable under paragraph 320 of the Tariff Act of 1913. Although we do not mean to be understood as holding that the statements contained in the Summary of Tariff Information, 1920 and 1921, are controlling of the issues here, nevertheless, when it is considered that the attention of the Congress was called to the decisions of the court below, and when it plainly appears that it was the purpose of the Congress to consolidate the various provisions for paper board contained in the act of 1913, into paragraph 1302, *supra*, the statement that—

Some manufacturers define paper board as paper nine one-thousandths of an inch or more in thickness. As this seems to be the more generally accepted dividing line between paper and paper board, it is used in the present classification.

contained in the Summary of Tariff Information, 1921, should be given considerable weight in considering the purpose and scope of the paragraph. Considered in the light of the history of the legislation, the language—

That for the purpose of this act any of the foregoing less than nine one-thousandths of an inch in thickness shall be deemed to be paper.

contained in the *proviso*, is not indicative of an intention to limit pulpboard to such as was made of more than one ply. Furthermore it seems to be clear that the Congress approved and adopted the

decisions of the court below holding that strawboard was dutiable under the provision for pulpboard.

We are not impressed with the argument that the involved merchandise is straw paper because it was made on a Fourdrinier machine.

For the reasons stated, we are unable to say that the court below erred in holding the merchandise to be dutiable as pulpboard under paragraph 1302. The judgment is *affirmed*.